Louis M. BROUSSARD et al., Appellants,

v.

Triphene MIDDLETON et al., Appellees.

No. 7444.

Court of Civil Appeals of Texas, Beaumont.

May 10, 1973.

Rehearing Denied June 7, 1973.

Dan Collie, Beaumont, for appellants.

Ed B. Pickett, Liberty, for appellees.

STEPHENSON, Justice.

Plaintiffs appeal from an adverse judgment entered in a declaratory judgment action involving the construction of a deed. Trial was to the court and, to a large extent, was upon stipulations of fact. The trial court filed no findings or fact or conclusions of law and none were requested. The parties will be referred to here as they were in the trial court.

The Broussard-Middleton deed forming the basis of this suit was executed on November 4, 1940. The premises clause, preceding the description of the land, read:

". . . have GRANTED, SOLD and CONVEYED, and by these presents do GRANT, SELL and CONVEY unto the said R. M. Middleton, of the County of Chambers, State of Texas, (subject, however, to the exception and reservation of all the oil, gas and other minerals, also a certain right-of-way deed for a ditch, as hereinafter specifically indicated) all those certain tracts or parcels of land situated in Chambers County, Texas, about seven or eight miles southeast of the town of Anahuac, and also a one-sixty-fourth (1/64) royalty right and interest in and to said tracts of land, and both the said tracts of land and the said one-sixty-fourth (1/64) royalty right and interest therein, being particularly described as follows:"

We now set out the description of the property conveyed in the nine separate paragraphs which immediately followed.

"FIRST: An undivided twenty-two-thirty-seconds ($^{22}/_{32}$) interest (795.5 acres) in and to 1157 acres of the R. E. Booth League, which was patented to . . . .

"SECOND: An undivided three-fourths (¾) interest (99.4 acres) in and to that certain tract of land containing 132.6 acres, and known as Survey No. 178, which was patented to . . . .

"THIRD: An undivided three-fourths (¾) interest (480 acres) in and to Survey No. 74, containing 640 acres, patented to . . . .

"FOURTH: An undivided three-fourths (¾) interest (480 acres) in and to Survey No. 76, containing 640 acres, patented to . . . .

"FIFTH: An undivided three-fourths (¾) interest (480 acres) in and to Survey No. 80, containing 640 acres, patented to . . . .

"SIXTH: An undivided three-fourths (¾) interest (615.2 acres) in and to Survey No. 82, containing 820.3 acres, patented to . . . .

"SEVENTH: An undivided three-fourths (¾) interest (692.25 acres) in and to that certain 923 acres of Survey No. 180, containing 1023 acres, . . . and said 923 acres being all of said survey except that certain 100 acre tract thereof which was conveyed by E. Moss to J. T. Moss as below stated.

"EIGHTH: All of that certain 100 acre tract of land, a part of the said J. B. Murray survey No. 180, and being the same 100 acre tract which was conveyed by E. Moss to J. T. Moss by deed dated June 14th, 1897, and of record in Vol. 1, page 515 of said deed records."

The ninth paragraph in the conveyance read:

"NINTH: An undivided one-sixty-fourth ($^{1}/_{64}$) royalty interest in and to all of the oil, gas and other minerals in and under and that may be produced and saved from all of the above described land and premises, and the said one-sixty-fourth ($^{1}/_{64}$) royalty interest to be delivered free of expense to the grantee herein, his heirs or assigns, on the land at the well or wells producing the same into the tanks or pipe lines in the usual manner to the credit of the grantee, his heirs or assigns.

"It is, however, expressly agreed and understood by and between the grantors and grantee herein, that the grantors save and except out of this conveyance and retain and reserve unto and for themselves, their successors, heirs and assigns, forever, all of the oil, gas and other minerals in and under and that may be produced from all of the above described land, together with the right of ingress and egress incident to the ownership of said oil, gas and other minerals, and to explore, prospect, drill and mine for and produce the said oil, gas and other minerals, and to take care of, treat, transport and market the same, but it is further expressly agreed and understood that such retention and reservation is subject to the one-sixty-fourth ($^{1}/_{64}$) royalty interest in and to all of said oil, gas and other minerals which is hereby conveyed to the grantee as above stated."

The habendum clause read:

"TO HAVE AND TO HOLD the above described premises and the above described one-sixty-fourth ($^{1}/_{64}$) royalty interest, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said R. M. Middleton, his heirs and assigns forever, and we do hereby bind ourselves, our successors, heirs, executors and administrators, to WARRANT and FOREVER DEFEND, all and singular, the said premises and the said one-sixty-fourth ($^{1}/_{64}$) royalty interest, unto the said R. M. Middleton, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof."

The defendants answered by pleading the two, three, four, five, ten and twenty-five year statutes of limitation and an additional plea of estoppel, laches, and stale demand. The trial court denied plaintiffs' prayer for relief and confirmed the defendants' contentions.

The primary question for this court to determine is whether a full ⅟₆₄ of 100% of the production was conveyed or a ⅟₆₄ of the undivided interest under the various tracts of land described in the deed was conveyed.

■ There is no competent evidence in the record as to the outstanding ownership of the surface or the mineral estate before the execution of the deed in question, so we do not have the problem considered by the Supreme Court in Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878 (1940), and its progeny. Instead, since no party contends that the deed is ambiguous, our construction must be under the rule enunciated in Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166, 167 (1953): "[It] must be given the legal effect resulting from a construction of the language contained within the four corners of the instrument." And as was said in Newsom v. Newsom, 378 S.W.2d 842, 844 (Tex.1964): "The problem of the proper construction of the deed is one of determining the intent of the parties."

Some of the well settled rules governing our construction of the instrument are set out in *Benge,* supra, and in Taylor v. Kerlin, 327 S.W.2d 793, 795 (Tex.Civ.App., San Antonio, 1959, error ref. n.r.e.), which we will follow.

We have carefully studied all of the cases cited to us by the parties, as well as all that we have been able to find, and none covers the precise question raised in the case before us. To support the trial court judgment, defendants rely primarily upon Clemmens v. Kennedy, 68 S.W.2d 321 (Tex.Civ.App., Texarkana, 1934, error ref.); King v. Cron, 285 S.W.2d 833 (Tex.Civ.App., San Antonio, 1956, error ref. n.r.e.); McElmurray v. McElmurray, 270 S.W.2d 880, 882 (Tex.Civ.App., Eastland, 1954, error ref.); and Spell v. Hanes, 139 S.W.2d 229, 230 (Tex.Civ.App., Texarkana, 1940, dism. judgm. cor.). None of these cases involved a conveyance of a royalty interest and of an undivided interest in the surface and those courts did not have to decide whether the conveyance of a royalty interest was under only the undivided surface interest conveyed.

■ Although not the same as the deed before us, the one in Hooks v. Neill, 21 S.W.2d 532 (Tex.Civ.App., Galveston, 1929, error ref.), is more similar than any we have found. In that case, the grantor conveyed a one-half interest in the surface and reserved a ⅟₃₂ royalty interest under the land described and *conveyed.* That court held the deed reserved a ⅟₆₄ royalty interest under the entire tract, with special emphasis placed by the court on the word "conveyed". The deed before us does not contain the word "conveyed", but we are convinced such was the intention of the grantor as shown by the language used.

The deed before us, in describing seven of the eight tracts conveyed, sets forth not only the percentage of undivided interest (²²⁄₃₂ of one and ¾ of six) but then shows the specific number of acres conveyed out of the larger tracts under which surfaces a ⅟₆₄ royalty interest is conveyed.

Our deed uses the words "above described", "described", and "description". The trial court construed those words as referring to the larger tracts out of which an undivided interest was conveyed. We construe those words as referring to the undivided interest that is being conveyed and hold that the larger number of acres was referred to for descriptive purposes only. We find nothing in the language in our deed to indicate the grantor intended to convey a larger percentage interest in the royalty interest than in the surface conveyed. For example, the first tract is an undivided ²²⁄₃₂ interest in 1157 acres, or

795.5 undivided acres of surface. There is nothing in the deed to indicate the grantor intended to convey more than a 1/64 royalty interest under the undivided 795.5 acres. The use of the word "all" in the ninth paragraph refers to the eight tracts of land described above it and does not enlarge the number of acres of royalty interest conveyed.

The judgment of the trial court contains a recitation that the court found for defendants in accordance with their second amended answer. There is no other indication as to the basis for the judgment. In that pleading, defendants alleged limitations, laches, stale demands and estoppel. Plaintiffs have points of error covering each of those defenses and they are sustained.

The parties entered into a stipulation in the trial court "that in the event the Court finds that the Plaintiffs are entitled to recover from the Defendants for such royalty income wrongfully received by the Defendants, then such damages are as follows, and the following table will be used to calculate the damages, according to which statute of limitations may or may not be found to be applicable: [then follows the amount paid to the Middleton defendants as and for a 1/256 royalty interest for each of the years beginning in 1960 to date of trial]."

We find the two year statute of limitations to be applicable under Art. 5526, § 2, Vernon's Ann.Civ.St. See Saunders v. Hornsby, 173 S.W.2d 795, 797 (Tex.Civ.App., Amarillo, 1943, ref. w.o.m.) and Pan American Petroleum Corporation v. Orr (5th Cir. 1963) 319 F.2d 612. In accordance with the table set out in the above mentioned stipulation, plaintiffs are entitled to recover the sum of $8,000.32 in damages.

The judgment of the trial court is reversed and rendered construing the deed to convey a 1/64 royalty interest under the undivided interest conveyed in the first seven tracts as shown above and a 1/64 royalty interest under the eighth tract and that plaintiffs have judgment against the defendants, jointly and severally, in the amount of $8,000.32.

Reversed and rendered.

KEITH, Justice (dissenting).

The majority opinion is unique; it *attempts to distinguish* five cases involving fractional mineral interest but cites *no* authority in support of the holding.* Being unable to follow the rationale of the majority, I respectfully dissent.

An examination of the authorities cited by the parties, some of which are cited in the majority opinion, reveals that the interpretation of instruments conveying fractional mineral interests has been a source of considerable judicial reasoning during the past forty years. One of the better analyses of the problem is to be found in the article by W. Barber, "Fractional Mineral Interests," 13 Sw.L.J. 320, 322 (1959), where most of the authorities relied upon by the parties are discussed. From his analysis of the many cases, the author distills the rules which should govern our case in this manner:

> "In applying the above general principle [of ascertaining the intention of the parties to the instrument], the courts have distinguished between language referring to land *described* in the deed and language referring to land *conveyed* by the deed." (emphasis in text)

Mr. Barber then articulates the two rules in these words:

> "*The 'Described' Rule.*—Where a fraction designated in a deed is stated to be a mineral interest in land described in the deed, the fraction is to be calculated upon the entire mineral interest.
>
> \*    \*    \*    \*    \*    \*
>
> "*The 'Conveyed' Rule.*—Where a fraction designated in a reservation clause is stat-

---

\* All emphasis has been supplied unless otherwise indicated.

ed to be a mineral interest in land conveyed by the deed, the fraction is to be calculated upon the grantor's *fractional* mineral interest except where the granting clause *purports* to convey the *entire* mineral interest." (Id. at 323, emphasis in text)

Although stating some of the rules of construction applicable to the case at bar, the majority has overlooked one important rule which is applicable to the case at bar. It was aptly stated by the late Chief Justice Hickman in Garrett v. Dils Company, 157 Tex. 92, 299 S.W.2d 904, 906 (1957): "[S]hould there be any doubt as to the proper construction of the deed, that doubt should be resolved against the grantors, whose language it is, and be held to convey the greatest estate permissible under its language."

Construing the deed in question under the recognized rules of interpretation, I am of the opinion that it is within the "Described" rule laid down by Barber, supra.

The key words in the royalty grant (paragraph NINTH quoted by the majority) are "all" and "above described." The use of the term "all" in some of the cases has been interpreted to include the whole of the physical land in question and the whole of the oil, gas and other minerals in and under and that way be produced and saved from the whole of said area of land. Thus, in Clemmens v. Kennedy, 68 S.W.2d 321 (Tex.Civ.App., Texarkana, 1934, error ref.), a granting clause which purported to convey an undivided one-half mineral interest in the "following described land" was held to convey one-half of the entire mineral interest and not just one-half of the grantor's one-half mineral interest. *Accord*: King v. Cron, 285 S.W.2d 833 (Tex.Civ.App., San Antonio, 1956, error ref. n. r. e., per Norvell, J.); Spell v. Hanes, 139 S.W.2d 229, 230 (Tex.Civ.App., Texarkana, 1940, dism. judgm. cor.). See also McElmurray v. McElmurray, 270 S.

W.2d 880, 882 (Tex.Civ.App., Eastland, 1954, error ref.).

It will be remembered that in our paragraph "NINTH", supra, the 1/64 royalty interest conveyed was "to *all* of the oil, gas and other minerals in and under and that may be produced and saved from all of the above described *land and premises.*" This interpretation of the contract is realistic when considered along with the statement from King v. First National Bank of Wichita Falls, 144 Tex. 583, 192 S.W.2d 260, 263 (1946): " . . . since oil or other minerals would necessarily be produced from the whole land irrespective of the ownership of undivided shares thereof."

The Broussard-Middleton deed consistently uses the words "above described", "described", and "description." In the first and third through sixth paragraphs, the physical land is referred to by survey number and then reference is made to recorded deeds, patents and corrected field notes "for a more definite description." The word "description" is obviously referable to the field notes or the metes and bounds set out therein and not to any undivided interest owned by any party. Sharp v. Fowler, 151 Tex. 490, 252 S.W.2d 153, 154 (1952): "To describe land is to outline its boundaries so that it may be located on the ground, and not to define the estate conveyed therein."

Thus, the phrase "above described" as thereafter used in the ninth paragraph and in the reservation paragraph of the deed must necessarily be referable to the whole of the physical land or tracts therein mentioned and not to the grantors' undivided interest therein.

In *McElmurray,* supra (270 S.W.2d at 881), relied upon by the Broussard plaintiffs, the granting clause purported to convey all of the grantor's undivided interest in "land described here below," and a prior clause purported to reserve an undivided one-half mineral interest in "the land here-

in described" (also referred to as "the following described land"). The court held that the deed reserved to the grantor an undivided one-half of the entire mineral interest.

In the earlier decision in King v. First National Bank, supra (192 S.W.2d at 262), which was followed in *McElmurray*, a clause reserving an undivided one-eighth of the usual one-eighth royalty interest in the "hereinabove described land" was construed to reserve one-eighth of the entire royalty interest in the land described, even though the granting clause purported to convey only the grantor's undivided one-half mineral interest in the described land.

The leading authority cited by the Broussard appellants in support of their position is Hooks v. Neill, 21 S.W.2d 532 (Tex.Civ.App., Galveston, 1929, error ref.). There the deed purported to convey all of the grantor's undivided one-half interest in described property and to reserve $\frac{1}{32}$ of all oil in "the said land and premises herein described and conveyed." Relying upon the word "conveyed", the court concluded that the clause reserved $\frac{1}{32}$ of the grantor's undivided one-half oil interest rather that $\frac{1}{32}$ of the entire oil interest.

The word "conveyed" appears only once in the Broussard-Middleton deed, in a paragraph following "NINTH", and is there used to make a general reference to the prior royalty grant and not in reference to lands, tracts or property previously described. I find no language in the deed which restricts or limits the grant of the royalty interest to the land "conveyed" or to any interest less than the whole. *Hooks* does not support the Broussard position.

Appellants' reliance upon Clack v. Garcia, 323 S.W.2d 468 (Tex.Civ.App., San An-

tonio, 1959, no writ), is likewise misplaced. The deed considered in *Clack*, like the one involved in Hooks v. Neill, is clearly distinguishable from the deed now under consideration. Grantor Clack excepted from his conveyance and expressly retained and reserved an undivided $\frac{1}{16}$ interest "(same being one-half of the usual one-eighth royalty)", and contended that he reserved $\frac{1}{16}$ of one-eighth or a $\frac{1}{128}$ royalty. The court, speaking through Justice Pope, noted that since at the time of the conveyance Clack owned only $\frac{1}{16}$ of the minerals, he reserved only a $\frac{1}{16}$ interest thereof or $\frac{1}{256}$. Hooks v. Neill, supra, was the only authority cited.

The first eight paragraphs of the granting clause conveyed only surface and not minerals. In the first seven instances, an undivided interest in a larger tract was conveyed. I am not persuaded that the parenthetical insertion of the quotient in the first seven descriptions is entitled to determinative effect. I submit that an undivided three-fourths interest in and to a survey containing 640 acres is in fact and in law precisely 480 acres by simple arithmetical calculation. One reason for the insertion of the parenthetical quotient may have been to simplify the calculation of the purchase price of the surface had it been upon an acreage basis. However, it should not be allowed to override the language in paragraph "NINTH" where a $\frac{1}{64}$ royalty interest is conveyed in and to *all* of the minerals in, under and that may be produced from *all* of the "above described land and premises."

To do so, as has been done by the majority, subverts the rule of construction set out in Garrett v. Dils Company, supra.

I would affirm the judgment of the trial court.