NUMBER 13-07-089-CV 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


 FELIPE DUENAS, Appellant,


v.



 MARIA DUENAS, Appellee.

 

On appeal from the 309th District Court 

of Harris County, Texas

 

MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Benavides and Vela


Memorandum Opinion by Justice Vela



 This is a divorce, contested termination of parental rights, and property division case. 
Appellant, Felipe Duenas, raises issues on appeal complaining of the trial court's refusal
to relinquish his parental rights, denying his right to a jury trial, and awarding 

more of the community estate to appellee, Maria Duenas. We affirm.

I. Background

 A. Relinquishment of Parental Rights

 Maria originally filed suit for divorce against Felipe in 2002. The couple married in
1992, after the births of their two children, and ceased to live together in 2002. On June
10, 2005, Felipe filed an amended counterclaim for divorce and sought to relinquish his
parental rights. In Felipe's pleading, he first urged that he was not the father of the minor
children and asked that his parental rights be terminated. The record reveals a history of
family disharmony, including issues of domestic violence and disturbance calls to the police
department. The trial court refused to relinquish his parental rights.

 At trial, Maria testified that there were two children born of the marriage. She asked
that she be made managing conservator of the children. According to Maria, the children's
birth certificates name Felipe as the father. She further stated that DNA testing suggested
that there was a 99.9% chance that Felipe was the father of the two children. Felipe
agreed that he was the presumed father based on DNA testing. Thus, he did not dispute
at trial that the two children were his; rather, he now asks that his parental rights be
terminated "for the love that was lost and the abuse of the kids, you know, with the mother." 


 Felipe testified he was voluntarily relinquishing his rights because it was best for the
future. He stated he had been physically abused by the two children. He also urged that
Maria was physically abusive to him. Felipe testified that he had not seen the children
since April of 2003. His daughter told him that they had a new father and that they did not
want to see him again. On cross-examination, Felipe said that he did not buy them
birthday or Christmas presents and admitted that he did not love the children. He stopped
loving them when he heard "from their lips that they love another person besides their
father." 

 Maria agreed to a standard possession order. According to Maria, Felipe and the
children do not have a good relationship. She concurred that Felipe does not want to see
the children and has nothing to do with the educational, medical, or psychological decisions
that have been made on the children's behalf. She testified that she wants the children to
have visitation with their father because they love him very much. The children want a
relationship with him, but he does not want one with them. Maria testified that she believes
that Felipe is using the children to hurt her.

 B. Community Estate 

 The trial court ordered all personal effects, such as jewelry furnishings, art, and
equipment within Maria's possession, as well as retirement plans existing by reason of her
employment, to her. The court made a nearly identical order with regard to those items
in Felipe's control. The court gave 100% ownership of the home to Maria and the children.
The court ordered 100% of the home in Guadalajara, Mexico to Felipe. The trial court
divided the debts to require each to pay his or her own debts incurred since their date of
separation. Each party was required to pay his or her own attorney's fees. 



 C. Right to Trial by Jury

 Felipe argued that he paid the jury fee but was not allowed a trial by jury. The
record reflects that Felipe paid a jury fee on January 28, 2004. Felipe made a written
request for jury trial in his amended answer on March 29, 2006. Trial began on June 21,
2006. The Reporter's Record does not reflect an objection by Felipe to proceeding without
a jury prior to its commencement. The Clerks' Record reflects no objection to proceeding
with the divorce hearing without a jury. 

II. Analysis

 A. Relinquishment of Parental Rights

 Felipe argues in his brief that the trial court erred in failing to allow him to voluntarily
relinquish his parental rights. He claims that it is a parent's right to determine the best
interests of a child, citing Roe v. Wade, 410 U.S. 113 (1973). Felipe urges that the only
issue is whether he voluntarily signed the affidavit of relinquishment. The trial court
thought differently, and so do we.

 A parent has the duty to care, direct the religious and moral training, control, protect,
support, and educate a child. Tex. Fam. Code Ann. § 151.001(a)(1)-(11) (Vernon Supp.
2006). The parent-child relationship is one of the most significant and protected
relationships in our jurisprudence. See Santosky v. Kramer, 455 U.S. 745, 758-59 (1982);
Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). It is protected to such a degree that it is
of federal constitutional dimensions. See Santosky v. Kramer, 455 U.S. at 758-59. The
termination of parental rights is final and ends all legal ties between the parent and child,
except inheritance rights. Tex. Fam. Code Ann. § 161.206(b) (Vernon Supp. 2006-07). 
Termination is such a drastic remedy and is of such weight and gravity that there is a
heightened burden of proof of clear and convincing evidence. See Tex. Fam. Code Ann.
§ 161.001 (Vernon 2006-07). 

 A trial court may grant a parent's suit for termination if it is in the best interest of the
child. Tex. Fam. Code Ann. § 161.005(a) (Vernon 2002); Linan v. Linan, 632 S.W.2d 155,
156 (Tex. App.-Corpus Christi 1982, no writ). However, no parent may blithely walk away
from his or her parental responsibilities. In re A.B., 444 N.W.2d 415, 419 (Wis. Ct. App.
1989). Several courts from other jurisdictions have rejected voluntary termination petitions
under circumstances akin to this one. See, e.g., In re Bruce R., 662 A.2d 107, 117 (Conn.
1995)("On the basis of the statutory scheme and the over-whelming [sic] public policy in
support of requiring that parents be held financially responsible for their children's support,
we conclude that the trial court must consider the financial condition of the parents as one
of the factors in determining the best interest of the child in contested consensual petitions
to terminate parental rights."); In re D.W.K, 365 N.W.2d 32, 35 (Iowa 1985) (father
expressed no interest in his child; his consensual termination petition was denied in the
best interest of the child where termination would "ultimately . . . open a hatch for a parent
to escape his or her duty to support a child"); R.H. v. M.K., 603 A.2d 995, 998 (N.J. 1991)
(parent may not voluntarily surrender his or her parental rights other than in adoption
context). The trial court had before it evidence of a discordant family. Felipe testified he
had been hurt by the perceived rebuff of his minor children. There was abundant evidence
of a vitriolic relationship between Maria and Felipe. There was no serious contention,
however, that Felipe was not the biological father of the two children. Hurt, anger, and
disappointment, however, should not be enough to legally destroy a parent-child
relationship. If we were to second guess the trial court's ruling, we would be condoning
Felipe's abandonment of his personal responsibility to support his biological offspring and
opening the door for other angry and disappointed parents to do the same. We agree with
the trial court's ruling that termination is not in the best interest of the children, and we will
not disturb it. Appellant's first issue is overruled. 

 B. Division of Property

 A trial court shall order the property to be divided in a just and right manner, having
due regard for the rights of each party and any children of the marriage. Tex. Fam. Code
Ann. § 7.001 (Vernon 2006). A trial court has wide discretion in dividing marital property
and that division will only be overturned on appeal when an abuse of discretion is proven. 
Zieba v. Martin, 928 S.W.2d 782, 786 (Tex. App.-Houston [14th Dist.] 1996, no writ). The
mere fact that a trial judge may decide a matter within its discretionary authority differently
from an appellate judge is not an abuse of discretion. Jones v. Jones, 804 S.W.2d 623,
624 (Tex. App.-Texarkana 1991, no writ). An appellate court will not reverse a trial court's
division of property unless it determines it to be manifestly unjust and unfair. Mann v.
Mann, 607 S.W.2d 243, 245 (Tex. 1980); Vandiver v. Vandiver, 4 S.W.3d 300, 303 (Tex.
App.-Corpus Christi 1999, pet. denied). A trial court may consider a myriad of factors,
including: 1) fault; 2) disparity of incomes; 3) benefits the innocent spouse would have
received from the continuation of the marriage; 4) business opportunities; 5) education and
training;(6) relative financial conditions and obligations; 7) size of respective estates and
the nature of the property; 8) custody of the children; 9) excessive community property gifts
to others or waste of community assets; and 10) tax consequences. Zieba 928 S.W.2d at
790-1.

 Felipe presents only two arguments with regard to the property division: 1) the trial
court erred in dividing the property because it did not take into consideration Maria's
alleged adultery; and 2) Maria did not file a sworn inventory or financial statement. 

 It is clear from the evidence discussed above regarding the division of the property
that the trial court heard evidence regarding the couple's property and divided it in a
manner that was just and right, keeping in mind that Maria had been the children's primary
care-giver. Neither party disputed the evidence at trial that Maria had two other children
by a man other than Felipe. However, Felipe's children were almost solely in Maria's care. 


 The parties also agreed that all exhibits would be admitted without objection. 
Contrary to Felipe's claim, a review of the exhibits shows a financial information statement
prepared and signed by Maria. While not sworn, there was no objection to its admission. 
The trial court also heard ample evidence to warrant the property division it made. We find
that the trial court divided the property in a just and right manner. We overrule appellant's
second issue. 


 C. Right to a Jury Trial

 Finally, Felipe argues that he did not waive his right to a jury trial. A party waives its
request for a jury trial if there is no objection when the trial court begins a nonjury trial. In
re D.R., 177 S.W.3d 574, 580 (Tex. App.-Houston [1st Dist.] 2005, pet. denied). Felipe
did not timely object. We overrule Felipe's third issue.

III. Conclusion

 The judgment of the trial court is affirmed. 

 


 

 ROSE VELA

 Justice


Memorandum Opinion delivered and 

filed this 12th day of July, 2007.